Court. The next case is 2012 death. Procedurally, can you gentlemen tell me how you're doing this? 5-5-5, are you intending to cover every, the same issues, or did you divide up the issues so that you'll each be addressing a discrete part of this case? Well, Your Honor, we intend to address the issues raised in the briefs filed on behalf of our client RACK ROOM SHOES. Well, two of them are the same in terms of the totes issue and the in-bank thing, and one of them continues to argue the totes issue. Apart from that, they're all the same, as far as I can tell. So, are you just planning on being repetitive 5-5-5? Is that your... Hopefully not. Well, that's what I'm hoping not to. But I'm going to put five minutes on your clock, and so when your five minutes is up, your time is up. But, you know, you've asked for 5-5-5, and you've reserved none of you any rebuttal time. Are you aware of that? Yes. All right. I'm looking for a knowing waiver. That's what I'm looking for. Hopefully we can rely on your statement. Are you arguing on behalf of all the parties? No. I'm arguing on behalf of RACK ROOM SHOES. All righty. It's at your peril. Go ahead. So, will we be hearing from skids? Imports? I think so. Your Honor, this case involves a sufficiency of three pleadings. I speak for RACK ROOM. And the question here is, does RACK ROOM's amended complaint contain sufficient factual allegations which, if taken as true, plausibly allege congressional intent to discriminate in tariff setting on the basis of gender and age? If so, we nudge our claims across the line from conceivable to plausible, which was required by the Supreme Court's Bell-Atlantic v. Quambley and Ashcroft v. Iqbal decisions. Let me first say that this case is different from the Totes Isotoner case the court heard in 2010. You were counsel on Totes, weren't you? I was. And the complaint in that... Why don't you just tell us where the daylight is? Because if you had just copied the Totes complaint, you wouldn't be here, right? I wouldn't be here. You wouldn't be here. So, your complaint is different from Totes... Yes. ...in a couple of aspects, right? Yes. Well, the Totes complaint was drafted and filed prior to the Quambley decision. It alleged intent, and it concludes every matter. The Court of International Trade said that if the... What beyond paragraph 31 in count 1 in your amended First Amendment complaint is different from your Totes complaint? Well, what is different from the Totes complaint, I believe, is in 21, where we alleged that Congress had available to it and rejected available... I thought it was 31, where you said have other non-gender factors. Okay. Is it 21 or 31? 31 is in the count, and 21... I'm sorry, 23, that we talk about the choices available to Congress. Now, in Totes, the CIT said, well, if these were facially discriminatory provisions, that pleading would have been sufficient. An appeal to this court ensued on the question of whether it was facial. This court said the provisions were not facial. Now, on this appeal, Rack Room accepts that the provisions are not facial. This court in Totes said, you've got to give us something more than a mere allegation. What we've given the court as something more is the fact... And the question is whether that raises you from possibility to plausibility, right? Well, Your Honor, what we've alleged is the availability and rejection of other non-discriminatory ways to levy a tax or set a trade policy. Now... Composition of materials, weight of materials, size, et cetera, right? I'm sorry, Your Honor? I'm reading from 23. Yeah. You have to be specific. You know, that's the whole deal here, is are you specific enough to get yourself out of Totes? Well, absolutely, but the tariff allows for setting rates based on weight, material, all sorts of ways that don't implicate constitutional or equal protection concerns. Congress didn't do that here. Now, in Commerce Clause jurisprudence, the Supreme Court has said... Does that really make sense to have the t-shirt dutied by how much it weighs? There are plenty of things that are subject to duty based on weight or based on value or based on the materials used, and none of those things would implicate a constitutional concern. It's only when you come down to say, I've got a cotton t-shirt for man and a cotton t-shirt for woman and there's different rates of duty that you have to ask a question under the Equal Protection Clause. How is that, just that, where you denote within a subheading gender, how does that show or indicate discrimination, discriminatory treatment? Well, first of all, because discrimination is based on no factor at that point other than gender. It's very important. We're not talking about a difference between a tuxedo and an evening gown. We're only talking about products that have all the same characteristics and are differentiated only by the gender. Okay, so let's say I buy that, then we move on to the intent. Where's the intent? Well, the intent is, first of all, Supreme Court has said that, you know, legislatures, and we're looking to determine the intent of a legislature, which is a collective body, they're often not going to reveal manifest discriminatory intent. But in the Commerce Clause cases, what the courts have said is you can look at the fact that they had available and rejected legitimate non-discriminatory alternatives, which Congress did here. Now, obviously the Commerce Clause and Equal Protection Clause look at different interests and offensive laws are judged on different standards. But what we're talking about here now is just intent. It's a question of fact. And if the failure to use the legitimate alternatives is sufficient, circumstantial evidence of intent, as the Supreme Court said in the Commerce Clause cases, well then as a factual matter, it's certainly enough to get us across the Whitfall versus Quambley line in a Commerce Clause case. What about the arguments that your client makes that there's other reasons why Congress would face a tariff classification on gender? We see no reason, we see no justification. Should we get the case underway, that would be the government's burden. How about negotiations with countries or setting boundaries or the reciprocal nature of some tariff negotiations, say under the WTO or under NAFTA? That's interesting background, but it has nothing to do with legislation. The President can negotiate in an extra-constitutional international framework. The Equal Protection Clause is only implicated when Congress takes the result of that negotiation and acts it as a law. And if that law discriminates against the protected interest, it's subject to review. What if Congress, for example in the SSA, in the Statement of Administrative Action, Congress typically will say they accept, they incorporate, they adopt the negotiating objectives of the executive branch. Aren't they also taking into account the purpose of the use of gender? Absolutely, but all of that has to stop at the waterline of the Constitution. Otherwise you would get into the argument the government suggests, which is a very dangerous one, which is to suggest that if a law is preceded by international negotiations, Congress can dispose of important constitutional guarantees. Okay, you're way over your time. Mr. Cohn, you're going to have to touch and take over for him. Pass the baton. I will pass the baton. There you go. May it please the Course. We know from Bravey Alexandria that an intent to disfavor a class can be readily presumed by the classification of attacks. Attacks on wearing yarmulkes is attacks on Jews. We know from totes that attacks on men's gloves also impacts men directly. So the issue before the Court today is not where is the light for us in light of totes, but where is the light for equal protection in the tariff arena? Because if we look back at the cases... But aren't you basically arguing that we need to overrule totes? I am. I know, but we can't do that. Well, I asked for on-bank review, Your Honor, and I didn't receive it. We can't give you that. Okay, so... You basically can trot out your in-bank petition to us and have us listen to it if you want, but we're going to deny it. No, Your Honor, I'd like to rest on the breeze, and we did follow Rule 35 when we made that request, but I understand that totes is existing. But there is no room left in light of totes in a rack room for the equal protection clause from a functional perspective. I've spent a lot of time thinking about this case and been wondering what would we need to show to survive a motion to dismiss? What more do we need than an explicit reference to a suspect class like women or men and a different rate of duty? What about, let's say, a general note or a note of interpretation to the HTS that says something like a higher duty on men's glove is designated because men make disproportionately more money than women do? Right. Well, we know, I think, from a number of... That, of course, would be clearly violative because those type of stereotypes are certainly violatively... But that type of language doesn't exist. It doesn't, Your Honor. And the problem is that type of language, if it exists, would be contained in confidential government documents that we have no access to. Yeah, but here the duty for men is less than the duty for all the other people, so... And, Your Honor, that exposes the greatest weakness in our case. Sometimes duties favor men and sometimes they favor women's goods. But we know from the Second Circuit decision in Manufacturer's Hanover where they're not all prejudicing one gender versus another but that's an issue for summary judgment. That's an issue for the merits. That's not a reason to kick us out of court, as Totes has done. So that's part of our weakness but you can see from that analogy or the analogy I'll give you, which is... Going back to Judge Moore's question, we need you to show discriminatory intent. And if the HTS has a high duty on gloves higher than for other genders and then further down it switches and now it's got a lesser duty, where's the discriminatory intent? Well, Your Honor, the discriminatory intent can be presumed from the use of the class and a different rate of duty. The Supreme Court has instructed this Court that a tax on wearing yarmulkes is a tax on Jews. Now if we had an import tax that was 100% on yarmulkes and 50% on head caps used by Muslims and duty-free for Catholics it would be the same idea. An intent to disfavor a class could be presumed. It's the same issue except that it's intermediate scrutiny. The statement that you keep referring to, that's dicta, wasn't it? Pardon me? The statement about the yarmulkes, that was just dicta. It was dicta, but this Court does not read dicta into nullity when it's been issued by the Supreme Court and I don't think that the Supreme Court makes pronouncements like that without intention. We have stultified so far in the Customs Court cases that have come before us, equal protection in the tariff arena and if we don't find a little bit of light for it I think it will be a sad day for this Court. Are you arguing for skids as well? Did I get that right? Yeah, skids is my claim. Alright. Let me ask you a question just real quickly on that. Now, in totes, this Court found third parties standing and in order to have third parties standing a litigant has to have a close relation to the third party whose rights are being asserted. I understand that skids was formed for this litigation. Correct. You weren't a party in totes. Pardon me? You were not a party in totes. Correct. And I presume you made a test importation in order to... I did. I made an entry. Correct. Has skids sold any products? No, Your Honor. Well, how do you... Where is your connection then? Where is your relationship to a third party in this case? Well, we have first party standing, Your Honor. And we know from... We have first and third party, but... Are you arguing here you've got first party standing? In totes we said that that standing existed under third party standing. Correct. Not first... Correct, Your Honor. And we're arguing for both first and third party standing. And if you look at the brief... So address a third party standing then and what's your close relationship to the customers if you as an importer with one importation have not made any sales? Your Honor, if you would refer to the brief in Sullivan v. Little Hunting Park where there was a white person  went all the way up to the Supreme Court. There was a restrictive covenant. When he attempted to sell an interest in the apartment or to the sports and the pool he was sanctioned by the community where he lived. But he made an attempt to sell. I mean, here there's no attempt. There is no attempt to sell, Your Honor. You don't have customers. You're not really an importer. Your Honor, Your Honor, if I may, we know from the decision Arlington Heights, the Supreme Court's decision in Arlington Heights even if one plaintiff doesn't have standing at the stage of motion to dismiss it does not matter if one plaintiff lacks standing. So you can address all these issues and if we get to the merits on this you can Is there any question that you don't have first party standing? I believe we have first party standing You paid the duty, right? Pardon me? You paid the duty, Your Honor. You paid higher duties. You've been hurt by higher duties. That's right. We have an injury in fact. I think we better turn over to Mr. Pike now. Thank you. Forever 21, right? Yes, sir. Good morning and may it please the court. I was not a party to the totes litigation so I guess I'm approaching this from perhaps a fresh perspective but I'd like to sort of find the light that you articulated earlier. There are two things that the Court of International Trade did not address       and you look at the Twombly stand and you look at the Twombly stand and you look at the Twombly stand and you look at the Twombly stand and it's also something that's standard because that's what this whole case is based on our failure to state a claim  to state a claim. It really rests on Twombly. Twombly was decided in a specific context. The Supreme Court was, that case involved antitrust matters and there was a potential for abusive litigation which was specifically cited by the Supreme Court. It migrated even to patent law as you say. And it might even apply to patent law. It's migrating everywhere. Right. Creeping like a stain. That's exactly right. And that's why this court needs to address it. I'm not asking the court to overturn totes. What I'm asking the court to do is to reverse the Court of International Trade with instructions that the Court of International Trade needs to articulate the context in which the case was decided. The context of a tariff case is much different and one of the things that the Supreme Court articulated in Twombly was that it did not do away with the notice pleading standard of Rule 8. And that's really all that's required here is a short and plain statement of the facts that puts the defendant on notice that there is  discrimination here in the setting of duty rates based on discriminatory gender or age based classes. That's all that's required. Twombly didn't change that. Twombly only articulated a new standard because of the particular context of that case and in alleging the facts that we have alleged which included by the way specific evidence that in prior tariffs the government did discriminate. There were woolens involved which were intended to be imported at a lower duty rate to promote the slave trade. I think even under Twombly the obligation is to plead sufficient and we're here to see if the facts that have been pledged are sufficient and the daylight that's been talked about has been the intent. I think after totes that's what was needed in order to get over the hurdle. Where's the intent? The intent has been shown by the facts that were pled and the additional information that was submitted to raise a plausible claim that perhaps the government did intend to discriminate. I'd like to quote from Justice Souter's dissent in Ashcroft versus Iqbal. This is exactly what this case is about. Twombly does not require a court at the motion to dismiss stage to consider whether the factual allegations are probably true. We made it clear on the contrary that a court must take the allegations as true no matter how skeptical the court may be. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it. Claims about little green men or plaintiffs recent trip to Pluto or experiences in time travel from our officer of the Forever 21 showing that men's and women's apparel move in the same channels of trade. Thus, there could be discriminatory impact based on that fact. Judge Reyna is trying to get you to focus on intent because that is your hurdle after totes. We pled the intent but we're not required to prove our prima facie case at the pleading stage. But don't you have to offer something that would suggest intent apart from the facial appearance because facial appearance is rejected in totes so that can't fill in for you an absence of intent. And we request that after totes you come back you're going to have to come back with intent and we're not here to adjudicate the intent just to see if you've pled sufficient facts to support a claim. We did and the fact is if you look at the requirements when there's asymmetry of information with the defendants having all the evidence I think I'm trying to get you to focus on where what is just tell me verbally what is your plausible reason for intent to discriminate against men or against women on the overankle shoes what is your plausible reason in the past there is evidence that the government has used the tariff to discriminate against classes of people based on gender and race and this is an explanatory note that was the tariff commission I asked the first guy that got up if you take your complaint separates you from totes a lot of the paragraphs are the same have you got the complaint I don't and I'm out of time I don't have the complaint the whole issue here is whether the quality standard was properly applied when the question was important you said that you have an affidavit and you point us to historical discriminatory activity by the government in the HTS and those are dated back to the beginning of the 20th century and since that time the HTS has gone tremendous change to keep up with changes in technology the HTS became the US HTS and the harmonized system came into being and we acceded to the world custom organization and different reasons for governmental reasons for why the US has adopted the HTS in its current form have taken place but you don't cite any modern type facts do you have something for us to look at we attempted to get those facts your honor I filed a freedom of information act request with the reference from the transition to the HTS as I stated in my reply brief I was told that number one I had to tell the government exactly what document I was looking for before they could give it to me what kind of document do you have   to look   don't have a document to look at I don't have a document to look at I don't have a document to look at anything if I didn't have one I have a document to look at I don't have a document to look at I don't have a document to look at I don't have a document to    will not have one the other document or certificate unless there is no specific need or policy from the government. I don't have a document to  that I have a document to prove that I have a document to prove that I have a document to prove that I have a certificate to prove that I have a document to prove that I have a document to prove that I have a document to prove that I have  document to make   that it's a document to make real clear that it's a document that is made public and marginal to    capitalism says that . Are you ready to make that document clear today in your design document ? suggest ed I am   suggest ed I am ready to make that your design document ? am ready to make